**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CURTIS SCHMID, on behalf of plaintiff and a class, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRANSWORLD SYSTEMS INC. | ) |
| as successor to NCO FINANCIAL SYSTEMS INC., | ) |
| NCO FINANCIAL SYSTEMS INC., | ) |
| and BLITT AND GAINES PC, | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT – CLASS ACTION**

### INTRODUCTION

1. Curtis Schmid seeks redress from unlawful collection practices engaged in by Transworld Systems Inc. ("Transworld") as successor to NCO Financial Systems Inc., NCO Financial Systems Inc. ("NCO") and Blitt and Gaines PC ("B&G"), contrary to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction exists under jurisdiction under 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331 and 1337.

3. Because defendants' collection activities occurred in this District, and because they do business here, personal jurisdiction and venue in this District is proper.

### PARTIES

4. Curtis Schmid lives in Pleasant Prairie, Wisconsin.

5. Transworld – is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Pennsylvania 19044, which does business in Illinois, and whose registered agent is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604 – is a collection agency, and is the successor to NCO, which is also located at 507 Prudential Road, Horsham, Pennsylvania 19044. It specifically seeks to collect defaulted

1

consumer debts originally owed by others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce. The actions it took against Schmid (as alleged herein) were done in the course of its commercial activities.

6. NCO – a Pennsylvania corporation with offices at 507 Prudential Road, Horsham, Pennsylvania 19044, which does business in Illinois, and whose registered agent is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604 – seeks to collect defaulted consumer debts originally owed by others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce. Its collection activities include mailing collection letters to consumers, and utilizing a nationwide network of attorneys to bring suits against consumers (including the sharing of information with those attorneys). (http://www.ncogroup.com/Services/Agency_Attorney_Network.html.) Among the debts NCO sought to collect were student loans. The actions it took against Schmid (as alleged herein) were done in the course of its commercial activities.

7. B&G – a law firm organized as an Illinois professional corporation, located at 661 Glenn Avenue, Wheeling, Illinois 60090 – seeks to collect defaulted consumer debts originally owed by others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce. It specifically files suits on behalf of debt collectors and debt buyers, including NCO.

8. Each defendant is a "debt collector," as defined in 15 U.S.C. §1692a.

**FACTS**

9. Defendants have been seeks to collect from Schmid alleged student loan debts, incurred for personal, family or household purposes.

10. On or about March 27, 2014, NCO sent plaintiff (at a former address in Illinois) the letter attached as <u>Exhibit A</u> seeking to collect a student loan debt. It was sent to him in a "window envelope," through which address information could be seen..

11. <u>Exhibit B</u> represents the standard form of window envelope used by NCO.

12. The window envelope displayed several lines of text through the upper window, above the bar code for the return address. One of the lines is Schmid's account number.

13. On or about June 6, 2014, NCO sent plaintiff the letter attached as <u>Exhibit C</u>, seeking to collect a student loan debt. This was also sent in a window envelope, and also displayed his account number.

14. On or about July 14, 2014, NCO sent plaintiff the letter attached as <u>Exhibit D</u>, seeking to collect a student loan debt. This was also sent in a window envelope, and also displayed his account number.

15. On or about August 25, 2014, NCO sent plaintiff the letter attached as <u>Exhibit E</u>, seeking to collect a student loan debt. This was also sent in a window envelope, and also displayed his account number.

16. On or about January 23, 2015, B&G filed a lawsuit in the Circuit Court of Lake County, Illinois, on behalf of National Collegiate Trust, case 15 AR 68.

17. On or about February 18, 2015, B&G filed a lawsuit in the Circuit Court of Lake County, Illinois, on behalf of National Collegiate Trust, case 15 AR 165.

18. At no time in January or February 2015 did plaintiff live in Illinois.

19. The alleged debts were sent to B&G by Transworld, as successor to NCO.

**RELATIONSHIP BETWEEN B&G AND TRANSWORLD / NCO**

20. On information and belief, B&G is part of NCO's attorney network, and handled Schmid's debts as a part of its activities in that network.

21. On information and belief, based on affidavits and evidence in *Williams v. NCO Group, Inc.*, No. 5:10CV761 (C.D.Cal.), *NCO Financial Systems Inc. v. Daniels Law Offices PC*, No. 1:11CV11035 (D.Mass) and other cases, NCO selects counsel, communicates with counsel, and instructs counsel. The nominal plaintiff in each case does not select, communicate with or instruct counsel.

22. NCO directs network law firms to not communicate with the nominal plaintiffs:

> NCO will interact directly with the Client. In some instances, attorneys may interact directly with the Client only after a request is made through NCO and the Client approves. Only in urgent situations, the firm, and a Client may make contact providing that NCO has also been informed of the situation. If a Client initiates contact with an Attorney Firm directly, the firm is responsible, for the purposes of inventory control and tracking, to notify NCO of the communication.
>
> ln essence, the Attorney Firm's first point of contact is NCO. All statements, notices, information, etc. will go through NCO. (Attorney Firm SOP v.2.1)

23. Another portion of the SOP v. 2.1 (4.2.1) states that "All communications regarding accounts will be conducted between the Attorney Firm and NCO only." On information and belief, subsequent versions of the SOP were consistent.

24. Network firms are expressly informed that they are "required to follow NCO's Network Attorney Standard Operating Procedures."

25. Both NCO and network firms are paid on commission.

26. NCO grades network firms in Attorney Report Cards based on "key performance indices" geared to the speed with which judgments are obtained and collected. The indices include such metrics as"Payer Rates," "Suit Rate," "Service Rates," "Judgment Rates" and "Spin" or "Liquidation Rates."

27. On information and belief, all acts complained of herein were taken by B&G on behalf of Transworld and its predecessor NCO, as its authorized agents.

28. The complaints and attachments were form documents, regularly used by B&G.

29. Transworld and its predecessor NCO regularly engaged in and expressly or tacitly authorized deceptive and unfair conduct in connection with the collection of debts, as shown by the following:

   a. One of the NCO employees that signed affidavits for National Collegiate cases, Chandra Alphabet, signed an agreement with the Georgia Bar to cease and desist from engaging in the unauthorized practice of law in March 2013.

   b. On July 9, 2013, NCO and related entities entered into a consent judgment

in *United States v. Expert Global Solutions, Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., ALW Sourcing, LLC, Transworld Systems Inc.*, 3:13CV2611 (N.D.Tex.), agreeing to injunctive relief and to pay $3.2 million in penalties for improper debt collection practices involving harassment and abuse.

c. In February 2012, the Attorneys General of 19 states (Alaska, Arkansas, Idaho, Illinois, Iowa, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Vermont, and Wisconsin) entered into a settlement with NCO to resolve allegations of deceptive and unfair debt collection practices, under which NCO agreed to pay $575,000 to the 19 states for consumer protection enforcement efforts and an additional $50,000 for each participating state to refund consumers with valid claims.

d. In 2010-2012, NCO signed a series of consent orders with the Minnesota Department of Commerce, involving such conduct as hiring unfit persons.

e. In November 2010, NCO signed a consent order with the Arizona Department of Financial Institutions involving, among other things, unauthorized practice of law.

f. In January 2006, NCO entered into a settlement with the Pennsylvania Attorney General to resolve numerous claims of using false, deceptive, or misleading representations or means and harassment in connection with the collection of debts.

g. In 2004, NCO Group Inc. settled Federal Trade Commission charges that it reported inaccurate information about debtors accounts to credit reporting agencies and paid $1.5 million in civil penalties.

## COUNT I – FDCPA – INDIVIDUAL CLAIM

30. Plaintiff incorporates paragraphs 1-29, and seeks relief against all defendants.

31. Defendants violated 15 U.S.C. §1692i by filing the two lawsuits against plaintiff in the Circuit Court of Lake County, Illinois, when plaintiff neither signed the contract sued upon there nor resided there when suit was filed. 15 U.S.C. §1692i provides:

**(a) Any debt collector who brings any legal action on a debt against any consumer shall--**

**(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or**

**(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity--**

**(A) in which such consumer signed the contract sued upon; or**

**(B) in which such consumer resides at the commencement of the action.**

**(b) Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors.**

WHEREFORE, the Court should enter judgment in favor of plaintiff, awarding

(A) statutory damages,

(B) attorney's fees, litigation expenses and costs of suit, and

(C) all other proper relief.

## COUNT II – FDCPA – CLASS CLAIM

32. Plaintiff incorporates paragraphs 1-29, and seeks relief against Transworld, as successor to NCO.

33. NCO violated 15 U.S.C. §1692f(8) by displaying plaintiff's account number on the outside of its envelopes. *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014).

34. 15 U.S.C. §§1692f and 1692f(8) provide:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(8)** **Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.**

## CLASS ALLEGATIONS

35. Plaintiff seeks relief for a class under Fed.R.Civ.P. 23(b)(3), which includes all individuals residing in Indiana, Illinois, and Wisconsin, to whom NCO sent correspondence, seeking to collect a National Collegiate Trust student loan, which revealed an account number on the outside of the envelope, for all letters ent on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action.

36. Based on the use of form, bar-coded documents, there are over 40 members of the class, making joinder of all of them impractical.

37. There are questions of law and fact common to the class, which predominate over any questions relating to individual class members. The predominant common questions are whether NCO's communication improperly reveals the account number that NCO assigned to plaintiff.

38. Plaintiff's claims are typical of the claims of the class members. All are based on the same common questions of law and fact.

39. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

40. A class action is superior for the fair and efficient adjudication of this matter, in that (A) individual actions are not economically feasible, (B) members of the class are likely to be unaware of their rights, and (C) Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class, awarding

(A) statutory damages,

      (B)    attorney's fees, litigation expenses and costs of suit, and

      (C)    all other proper relief.

                                    s/Daniel A. Edelman
                                    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

### NOTICE OF LIEN AND ASSIGNMENT

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                    s/Daniel A. Edelman
                                    Daniel A. Edelman

### DOCUMENT PRESERVATION DEMAND

      Plaintiff hereby demands that defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendants are aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

                                    S/ Daniel A. Edelman
                                    Daniel A. Edelman