**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CURTIS SCHMID, ) | |
| ) | |
| Plaintiff, ) | No. 15 C 02212 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| TRANSWORLD SYSTEMS, INC., ) | |
| NCO FINANCIAL SYSTEMS, INC., and ) | |
| BLITT AND GAINES, P.C., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Curtis Schmid brings this action against Defendants Transworld Systems, Inc., NCO Financial Systems, Inc., and Blitt and Gaines P.C. for alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*[1] Schmid's complaint raised two counts, one an individual claim and the other a class claim. The individual claim has been settled. R. 39. Transworld and NCO move to dismiss the second count (Blitt is not named in the second count) for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

**I. Background**

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Plaintiff's favor. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2079 (2011). Curtis Schmid lives in Wisconsin.

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

R. 1, Compl. ¶ 4. Transworld is a California-chartered collection agency that seeks to collect defaulted consumer debts by using mail, telephone, and electronic wire services. *Id.* ¶ 5. Schmid alleges that Transworld is the successor to NCO, which is a Pennsylvania corporation that engages in similar collections activities. *Id.* ¶¶ 5, 6. The two entities share the same office address in Pennsylvania, and do business in Illinois through the same registered agent. *Id.* Blitt and Gaines is an Illinois law firm that files suit on behalf of debt collectors and debt buyers, including NCO. *Id.* ¶ 7.

From March to August, 2014, NCO sent four collection letters to Schmid, seeking to collect a student loan debt. Compl. ¶¶ 9-15. Each of the letters was sent in an envelope with at least one transparent "window," through which address information, printed on one of the enclosed sheets of paper, can be seen. *Id.* ¶¶ 12-15. In each case, some text was visible through the "upper window," located above a bar code and the return address. *Id.* Copies attached by Schmid to the complaint reveal that on each letter this text was a different string of around twenty letters and digits; this Opinion will use an "X" to stand-in for numbers that supposedly reveal account-number information. *See id.*, Exhs. A, C, D, and E (alphanumerical strings 926.XXXXXXXX.68V8.EDUA and NC0003.E.XXXXXXXX(6763)EDUA.25W). Embedded within this gibberish, according to Schmid, was his account number with NCO. *Id.* ¶¶ 12-15. In support of a class action, Schmid alleges that other individuals, living in Indiana, Illinois, and Wisconsin, received similar correspondence from NCO seeking to collect on student loans and revealing account

numbers that were visible through window envelopes. *Id.* ¶ 35; *see also id.* ¶ 11 & Exh B (copy of "standard form of window envelope used by NCO").

Schmid filed this lawsuit in March 2015, alleging that NCO's mailings to him and the purported class violated the FDCPA's ban against the use of certain language on debt-collection envelopes. Compl. at Count II. He also alleged in Count I that Blitt and Gaines violated the FDCPA by filing two lawsuits against him to collect debts on behalf of NCO in an improper judicial district, where he neither resides nor signed the loan.[2] *Id.* at Count I. As mentioned, Count I has been settled (which ends Blitt and Gaines' involvement in the action), *see* R. 39, Joint Stipulation of Dismissal filed 08/24/15, and now NCO and Transworld move to dismiss Count II. R. 25, Mot. Dismiss.

## II. Standard of Review

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56). These allegations "must be enough to raise a right to

---

[2]A debt collector may only bring suit in a judicial district in which the consumer "signed the contract sued upon" or where the consumer "resides at the commencement of the action." 15 U.S.C. § 1692i.

3

relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Discussion

### A. Schmid Fails to State a Successor Claim against Transworld

Transworld argues that Schmid has failed to allege anything to show that it is the successor to NCO's liabilities. Defs.' Br. at n.4. Schmid makes no response to the argument. Under federal common law, successor liability "allows lawsuits against even a genuinely distinct purchaser of a business if (1) the successor had notice of the claim before the acquisition; and (2) there was 'substantial continuity in the operation of the business before and after the sale.'" *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) (quoting *E.E.O.C. v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994)). Schmid's complaint lacks any factual allegations to support either of the two necessary elements. The only ways in which the complaint even hints at the topic are that Transworld and NCO have the same address in Pennsylvania, and that Transworld, "as successor to NCO," sent debts to Blitt and Gaines for collection. *See* Compl. ¶¶ 5-6, 19. These allegations are insufficient, shedding no light on the relevant issues of notice and continuity of business (indeed whether Transworld even purchased NCO), and the complaint's use of the word successor is nothing more than a bare, unsupported legal conclusion. According to the complaint, all of the letters underlying Schmid's claim were sent by NCO, not

4

Transworld. *See id.* ¶¶ 10-15. Accordingly, any claim against Transworld is dismissed (in any event, even if Transworld is the successor to NCO's liabilities, the dismissal against NCO also would apply as to the claim against Transworld).

**B. Schmid Fails to State a Claim that NCO Letters Violated the FDCPA**

**1. Governing Law**

In 1977, Congress enacted the FDCPA to curb "the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). The law prohibits "unfair or unconscionable means to collect or attempt to collect any debt" as a matter of "general application." 15 U.S.C. § 1692f. Section 1692f provides a non-exhaustive list of examples of prohibited conduct, the eighth and last of which is "using any *language or symbol*, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram[.]"15 U.S.C. § 1692f(8) (emphasis added). The statute provides for an exception: "a debt collector may use his business name if such name does not indicate that he is in the debt collection business." *Id.*

To determine whether a collection practice violates the FDCPA, it must be "viewed … through the eyes of the 'unsophisticated consumer'" or debtor. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (citations omitted). "The unsophisticated consumer is uninformed, naive, and trusting, but possesses rudimentary knowledge about the financial world." *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (citation and internal quotation marks omitted). Whether this hypothetical consumer would be unfairly targeted or

otherwise harmed by the practice in question is an objective inquiry. *See id.* (citing *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005)). In adopting this test, the Seventh Circuit has rejected the "'least sophisticated debtor' standard used by some other circuits." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (citing *Gammon v. GC Servs., Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994)).

## 2. Allegation that Text was Visible is Sufficient

As a threshold matter, Defendants question whether the envelope Schmid attached to the complaint as a representative example of the standard-form envelope used by NCO (and presumably sent to the class) is actually comparable to the one that he himself received. R. 26, Def.'s Br. at n.1. Defendants note that in contrast to the copy of this example standard-envelope, which clearly shows text above the recipient's address visible through the window, Schmid only attached copies of the *letters* he received from NCO: these have the allegedly FDCPA non-compliant text printed above the return address, but, without the envelope, there is no indication of precisely what on the folded letter was visible through the window. *Compare* Compl., Exh. B *with* Exhs. A, C, D, and E. Although tucked away in a footnote, this point appears to be a separate basis for challenging whether Schmid has stated a claim to relief, as it asserts that Schmid has not "presented any evidence as to what was specifically appearing through the envelope window on [his] letters." Def.'s Br. at n.1.

But at the dismissal stage, Schmid has no burden of presenting such definitive evidence; he need only state the factual premise of a plausible claim for relief. A court may "consider documents attached to the complaint as part of the complaint itself," which "may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quotations omitted). In other words, a plaintiff can plead himself out of court by attaching a document that fatally undermines the factual premise of a claim. But that is not the case here. The fact that Schmid attached a copy of the standard-form envelope, revealing exactly what could be seen through its window, but did not do the same for his own correspondence does seem odd (perhaps he threw the envelopes away). That said, the absence of a copy of his envelopes does nothing to make his factual allegation—that in the case of his four letters, among the text that was visible through the upper window was the return address and Schmid's account number (presumably there was a lower window for the recipient address), Compl. ¶ 12—inherently implausible or impossible. Accordingly, accepting the complaint's factual assertions as true at this stage, Schmid's allegation that his account number could be seen through a window on the envelopes he received may be properly accepted at face value.

### 3. Text on NCO's Envelope was not Unfair or Unconscionable

#### a. Purpose and Context of § 1692f(8) Avoids Absurd Result

The only remaining issue is whether the display of this text violated the FDCPA. Remember that the FDCPA bars a debt collection from "using any

7

language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram[.]"15 U.S.C. § 1692f(8). At first glance—and divorced from the statutory context—it seems that the alphanumerical strings might run afoul of the literal terms of the statute. But the statute's literal terms cannot be read without taking the entirety of the statute into account; as discussed below, Schmid's proposed interpretation would lead to absurd results.

The first piece of context that must be considered is the prefatory text of § 1692f. The ban against using any language or symbol is not a stand-alone provision; it is just one example in what is an explanatory listing of what constitutes, in the words of the prefatory text of § 1692f, an "unfair or unconscionable *means* to collect or attempt to collect" a debt. (Emphasis added.) So the complained-of conduct must be a "means" to collect a debt in order for the conduct to even qualify as possibly violating § 1692f. There is simply nothing in the alphanumerical strings that transforms the letters and numbers into a "means" to collect a debt.

The prefatory context—that the conduct must be a "means" to collect a debt— also illuminates the sub-section's text as well: the sub-section bars the debt collector from "using" any "language or symbol," other than the debt collector's address (and a non-debt-collector business name), when "communicating" with the debtor. Each piece of quoted text—reinforced by the need for the conduct to be a "means" to collect a debt—demands that the ban apply only to language or symbols that

8

actually *communicates* something to the debtor. After all, that is what "language" and "symbol[s]" are—someone uses language and symbols to communicate an idea or information to someone else. Absent a communication on the envelope as a means of collecting a debt, the sub-section is not violated.

Under Schmid's proposed interpretation—that no text or symbol of any kind can appear on the envelope—it would be unlawful to place even the *recipient*'s address or a postage stamp (most stamps have language or symbols or both on them) on an envelope. Presumably, debt collectors would have to hand deliver all their (unaddressed) letters. Courts have noted the bizarreness of such a result, leading to the conclusion that the overly strict interpretation of this sub-section is not dispositive. *See, e.g., Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 318 (8th Cir. 2004); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 493 (5th Cir. 2004). Indeed, "although the FDCPA is a strict liability statute," like any other statute, "literal construction of statutory language" must be avoided "if it would lead to absurd results." *Davis v. MRS BPO, LLC*, 2015 WL 4326900, at *5 (N.D. Ill. July 15, 2015) (citing *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 798 (7th Cir. 2010)). Thus, some courts interpret § 1692f(8) to allow for "benign" language or symbols that are obviously unrelated to debt collection and do not otherwise "intimate[ ] that the contents of the envelope relate to collection of delinquent debts." *Goswami*, 377 F.3d at 494 (holding that words "Priority Letter" did not violate § 1692f(8)); *see also Strand*, 380 F.3d at 319 ("[A]n interpretation of § 1692f(8) exempting benign words and symbols better effectuates Congressional

purpose.") (no violation based on a corporate logo and the words "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED").[3] Although the Seventh Circuit has yet to weigh in on that interpretation, a number of courts in this District have adopted similar reasoning to find that § 1692f(8) "should not be construed mechanically." *Gonzalez v. FMS, Inc.*, 2015 WL 4100292, at *4 (N.D. Ill. July 6, 2015) (collecting cases within District and from other districts); *see also Davis*, 2015 WL 4326900, at *5; *Davis v. Baron's Creditors Serv. Corp.*, 2001 WL 1491503, at *5 (N.D.Ill. Nov. 20, 2001).[4]

Schmid looks instead to *Douglass v. Convergent Outsourcing*, in which the Third Circuit found that the "text of § 1692f(8) is unequivocal" and accordingly its "plain language … does not permit [a debt collector's] envelope to display an account number." 765 F.3d 299, 303 (3d Cir. 2014). To find that a literal reading of § 1692f(8) would not necessarily be absurd in this context, the court looked to the underlying purposes of the FDCPA, one of which is to guard against the invasion of debtors' privacy—because the "account number is a core piece of information pertaining to [one's] status as a debtor and [the] debt collection effort," which, if

---

[3] The Court need not decide whether to endorse *Strand*'s application of the statutory interpretation; as explained above, if the debt collector uses language on the envelope as a means of debt collection, then it might very well violate § 1692f(8) to use urgent and alarming language on the envelope, including expressions of immediacy that do not give the debtor the time periods allowed under the FDCPA to respond or to inquire about the debt.

[4] In urging the rejection of an overly strict reading, NCO cites to a Federal Trade Commission Staff Commentary that likewise notes "harmless words or symbols" should not create liability under the FDCPA. Defs.' Br. at 7-8 (quoting 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988)). The Seventh Circuit has held, however, that "[t]he FTC Commentary is not binding on the courts because it is not a formal regulation" and that in interpreting 15 U.S.C. § 1692f, the FTC commentary is neither "particularly helpful" nor "persuasive." *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 764-65 (7th Cir. 2006).

10

"[d]isclosed to the public, ... could be used to expose [the debtor's] financial predicament," the court held that a ban on stating the account number was perfectly consistent with the statute's aims. *Id.* at 303-04 (holding that because account number "implicates core policy concerns, it cannot be deemed benign"). Relying on *Douglass*, Schmid argues that there is no reason why a literal reading of § 1692f(8)'s prohibition of "any language" should not apply; indeed, he goes even further than *Douglass*, which had no need to decide the precise scope of the statutory ban because the court felt that the account number was an obvious breach of debtor privacy, to assert that the terms should be interpreted as strictly and literally as possible. R. 34, Pl.'s Resp. Br. at 4-5.

As discussed above, the entire context of the statute does not permit Schmid's proposal: when the general prefatory text is read with the specific ban on "using" any "language or symbol" when "communicating" with a debtor, the Court must conclude that § 1692f(8) does not ban an alphanumeric string that communicates nothing. Nor does Schmid's proposed interpretation do anything to advance the purpose of the FDCPA. "The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices," *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997), including those that invade debtors' privacy. The display of text on an envelope that makes it readily apparent to anyone who might see it that the enclosed contents deal with the recipient's debt obligations (including even the use of the sender's name if it's clearly associated with debt collection, *see* 15 U.S.C. § 1692f(8)) would breach that

privacy and thus represent the kind of "unfair or unconscionable means" covered by § 1692f. A non-communicative sequence of letters and numbers does not raise this concern of unfairness or unconscionableness, at least not under the unsophisticated-consumer standard. *Davis*, 2015 WL 4326900, at *4 ("Because an unsophisticated consumer would not perceive [a string of otherwise nonsensical] letters and numbers on Plaintiff's envelope as connected to a debt collection, the core concern of privacy as highlighted in the *Douglass* decision does not come into play.").[5]

### b. Text in Question Did Not Communicate

Schmid argues that, even if the overly strict interpretation is wrong, NCO's correspondence violated § 1692f because the alphanumerical string was not benign, because it could "permit[ ] a third-party to conclude that the letter came from a debt collector." Pl.'s Resp. at 12. A third party could conclude as much, Schmid argues, because (1) he could run a Google search of the return address, which could possibly lead him to NCO; (2) the inclusion of the account number "shows NCO was writing … in order to collect something from" the recipient; and (3) the presence of the letters "EDUA" within the alphanumeric string "may permit a reader to conclude

---

[5]Section 1692f(8) is different in a respect from the other sub-sections under § 1692f that merits an observation. The unsophisticated-consumer is a standard for measuring the hypothetical debtor, for whose protection § 1692f exists: thus, other prohibited practices like soliciting a postdated check (to induce a criminal prosecution) or concealing a debt-collection effort through unrelated communication charges, 15 U.S.C. § 1692f(3), (5), ask if the unsophisticated consumer himself would be targeted by such a practice. Section 1692f(8), by contrast, is concerned with what effect a non-compliant envelope might have on not only the debtor, but also any member of the public to whom the envelope's contents might be revealed. So it is not entirely correct to ask how the unsophisticated debtor would perceive the envelope; the more accurate question is how would the envelope, if viewed by an ordinary member of the public, affect the privacy of the unsophisticated debtor (and ultimately, how a privacy intrusion would, in turn, pressure the debtor to pay).

12

that NCO was attempting to collect on … student loans." *Id*. at 11-12. None of these arguments have merit.

First, the Google hypothetical ignores the fact that § 1692f(8) specifically allows a return-address to be placed on the envelope, so long as the sender is not obviously identifiable as a debt collector. (Schmid makes no allegation that NCO's name on the envelopes was so obvious.) Thus, it was never within § 1692f(8)'s reach to make all debt-collections letters 100% untraceable—in particular against someone motivated to take extra steps to track down the source of his neighbor's business-looking mail. Admittedly, when the FDCPA was passed in the 1970s, it would have taken some sleuthing effort to use just an address to try and identify the sender, compared to the relative ease of running an internet search today. Still, that § 1692f(8) retains the address-exception even in the Google-era reflects the reality that the provision is not trying to completely guarantee that the source of the letter will remain anonymous against an intrusive neighbor. The statute shields against markings that might "intimate" to those who glimpse "that the contents of the envelope relate to collection of delinquent debts," *Goswami*, 377 F.3d at 494, not anything that could conceivably be used by an inordinately curious and very determined snoop, with the help of extrinsic research, to trace the letter.[6]

---

[6]The envelope in *Douglass* did include a visible quick response (QR) bar code which, if scanned by a smart phone, revealed the recipient's name, address, and a payment balance. *Douglass*, 765 F.3d at 301. Given the ubiquity of smart devices, such QR codes could represent a more direct threat to debtor privacy than the sender's mere address, although there are no allegations of a similar code on NCO's letters. The Court need not decide whether QR codes comprise enough of a communication to be banned by § 1692f(8).

13

Next, the remaining suggestions that the envelopes readily gave away their student debt-related contents based on the presence of the account number and the letters "EDUA" are utterly speculative. To accept this premise, one would have to believe that someone glancing at the jumble of over twenty digits and letters would discern a random sequence of eight imbedded within it—like a 3D-image that emerges from an inscrutable Magic Eye stereogram—and recognize it as an account number. And not just any account number (it is unclear why the reader would not just as easily think the number was associated with a frequent-flyer program, or a cheese-of-the-month club, or a gym membership if hard pressed to assign some meaning to it), but one linked to an overdue loan. This person would then pick out the "EDUA" and identify it as the scarlet letters of student debt; even assuming that "EDUA" triggers thoughts of education, why this association would lead to the unmistakable conclusion that the envelope contains an educational-loans notice (rather than, say, an academic transcript) is left unexplained. In sum, the allegations that the unintelligible string of letters and numbers visible on NCO's envelopes, because they evoke an account number and "EDUA," are recognizable as debt-related do not rise beyond a purely "speculative level." *Twombly*, 550 U.S. at 555. Schmid's efforts to show that, on the pleadings, he has stated a claim under § 1692f(8) fail.

## IV. Conclusion

For the reasons described above, Defendants' motion to dismiss for failure to state a claim is granted. The status hearing of September 9, 2015 is vacated.[7]

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 4, 2015

---

[7] In briefing the motion to dismiss the complaint, Plaintiff did not seek leave to amend the complaint in the event that the Court deemed the complaint to be inadequate, nor did Plaintiff suggest any possible amendments that would fix the deficiency discussed in this Opinion. But if Plaintiff believes he can fix the deficiency with amended allegations, then he may file a Rule 59 motion to alter judgment to propose the amendment, without meeting the high standards required for Rule 59 motions.